■ JEAN PHILIPPE CADICHON, Appellant, v THOMAS FACELLE, M.D., Appellant, LOUIS MAY, M.D., Respondent, et al., Defendants. [61 NYS3d 536]—

Order, Supreme Court, Bronx County (Douglas E. McKeon, J.), entered September 24, 2015, which granted defendant Louis May, M.D.'s motion for summary judgment dismissing the complaint as against him, unanimously reversed, on the law, without costs, and the motion denied.

In July 2002, plaintiff's decedent had two medical procedures, the first performed by defendant Thomas Facelle, M.D., and the second by defendant Louis May, M.D. Plaintiff alleges that

the doctors performed the procedures negligently, resulting in the perforation of the decedent's hepatic and/or common bile duct and, eventually, acute renal insufficiency and liver failure.

Following the first procedure, a laparoscopic cholecystectomy (gall bladder removal operation), the decedent returned to the hospital with pain and was admitted. Several bile duct scans came back showing that there was no extravasation (leakage) and thus no evidence of a bile duct perforation. However, Dr. May testified that another physician, who initially reviewed one of the studies and found no leak, on further review, found a leak, indicating a perforation. Agreeing with this finding on review of the study, Dr. May thus performed an endoscopic retrograde cholangiopancreatography (ERCP) to take X rays of the area through the endoscope and possibly repair the leak. During the ERCP, which involved using a catheter containing a guidewire, Dr. May encountered an obstruction and summoned Dr. Facelle. A bile duct perforation was discovered.

The parties' accounts diverge as to who perforated the duct. Dr. Facelle's records indicate that Dr. May advised him that his catheter had perforated the duct and entered into the abdominal cavity. Dr. May testified that he advised Dr. Facelle of leakage from an existing perforation. However, the parties agree that, after the catheter was advanced, a guide wire went through a perforation in the bile duct into the abdominal cavity, where Dr. Facelle left it to facilitate his finding the actual perforation in a subsequent exploratory laparoscopic surgery.

As an initial matter, Dr. May established his prima facie right to summary judgment dismissing the complaint on the grounds that he did not cause or exacerbate decedent's injuries. In support of his motion for summary judgment, Dr. May provided his deposition testimony, decedent's medical records and the affirmations of two experts who opined that there is no evidence of any departure from the standard of care by Dr. May, that Dr. May's actions were in accordance with good and accepted medical standards of care and that the care and treatment of decedent by Dr. May was not the cause of decedent's alleged injuries. Specifically, Dr. John Poneros, an expert in gastroenterology, opined that the perforation of the common bile duct occurred before Dr. May performed the ERCP based on decedent's complaint of abdominal pain and tenderness, jaundice and shoulder pain days before the ERCP was performed, the fluid seen on the CT scan dated July 23, 2002 and the fact that extravasation of contrast was evident before any instruments were introduced during the ERCP. A second expert, Dr. Jeffrey H. Newhouse, who also reviewed decedent's

films and deposition transcripts, opined that any perforation of bile duct occurred before Dr. May performed the ERCP based on a review of the fluoroscopic spot films taken during the ERCP procedure which demonstrated extravasation of contrast on initial injection of the bile duct before any instrument was introduced. Thus, Dr. Newhouse opined that decedent sustained a leak before the ERCP was performed and that none of her alleged injuries were caused by any of Dr. May's actions.

However, plaintiff and Dr. Facelle raised triable issues of fact as to whether Dr. May caused the bile duct perforation when he conducted the ERCP or exacerbated decedent's injuries by advancing the catheter and performing excessive manipulation when passing the catheter up the bile duct given decedent's condition. Plaintiff's expert opines that Dr. May departed from the accepted standard of care when he advanced the catheter knowing the decedent was at high risk for duct injury due to her post-surgical inflammation, and record evidence demonstrates that her bile duct was not healthy. Additionally, Dr. Facelle testified that he was summoned to the ERCP procedure by Dr. May because it was Dr. May who perforated the bile duct. Concur—Richter, J.P., Gische, Kapnick, Kahn and Kern, JJ.